IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SYSEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PHILLIP J. SYSEL, APPELLANT.

Filed December 19, 2017.    No. A-17-079.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Colleen M. Hassett, Deputy Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Phillip J. Sysel filed a motion to discharge in the district court for Sarpy County, alleging violations of his speedy trial rights under both the interstate Agreement on Detainers Act (detainers act) and Nebraska's speedy trial act, as well as a violation of his constitutional right to a speedy trial. The court denied Sysel's motion, and Sysel appeals. Finding no error, we affirm.

## BACKGROUND

On November 4, 2015, the State filed an information, charging Sysel with fourth offense driving under the influence (DUI), a Class IIIA felony; felony driving during revocation period, a Class IV felony; refusal to submit to a preliminary breath test, a Class V misdemeanor; refusal to submit to a chemical test, a Class W misdemeanor; possession of an open alcoholic beverage container, an infraction; and improper lane change, an infraction. Subsequently, on October 24,

- 1 -

2016, the State file an amended information, changing the first count to DUI, fourth offense/refusal, a Class IIA felony.

On November 9, 2015, Sysel was arraigned. Sysel appeared with his counsel and entered pleas of not guilty. The district court scheduled a pretrial hearing for January 8, 2016, and warned Sysel that if he did not appear at that time, a warrant would be issued for his arrest. The pretrial hearing was continued on January 8 to February 19, and again on February 19 to March 25, both continuances on Sysel's motion. Sysel appeared with his attorney on both January 8 and February 19.

On March 25, 2016, Sysel did not appear for the pretrial hearing. Sysel's attorney informed the district court that Sysel was in custody in Pottawattamie County, Iowa "on new matters." Because Sysel had "a fairly high bond over there" and would not be available "until he bonds out," his counsel asked to continue the hearing. The State objected, asked that a capias issue, and also asked that any bond in the Nebraska case be forfeited. The court granted the motion for a capias and took the bond forfeiture under advisement.

On April 22, 2016, Sysel filed a pro se "Motion for speedy trial" in the district court. Sysel asserted that he was currently incarcerated at the Iowa Medical and Classification Center in Oakdale, Iowa, that on September 18, 2015, he "was charged by trial information," and that he "hereby demands to be brought to trial []within 180 days from the aforementioned date." As further explanation of "proceedings that require a speedy trial," Sysel stated:

> I was to have court on 3-21-16 to plead out on the [instant Nebraska] criminal case . . . however I was incarcerated in the [Pottawattamie County] jail in Council Bluffs, Iowa in which I was sentenced to a term not to exceed five (5) years on 4-5-16. My public defender . . . of the Sarpy County public defender[']s office told me to send this request to the clerk of the district court to be able to move forward and have these charges resolved.

On May 2, 2016, the district court held a hearing on Sysel's pro se motion. Sysel's attorney confirmed that Sysel was then incarcerated in the Iowa penal system, and the court received a copy of a commitment order from the State of Iowa, showing Sysel's incarceration for a term not to exceed 5 years. In considering Sysel's pro se motion in this case, the court treated the motion as a request for speedy disposition under the detainers act, which "just -- starts the clock." The State and Sysel's counsel both agreed with this assessment of the pro se motion. The court determined that it was the State's obligation to seek custody of Sysel under the detainers act.

On August 19, 2016, the State filed a copy of "Form VII" in the district court, showing its response pursuant to the detainers act to the July 1 offer of temporary custody of Sysel by the warden of Clarinda Correctional Facility in Clarinda, Iowa and reflecting the State's "plan to send our agents to the Clarinda Correctional Facility to bring [Sysel] to our jurisdiction [Sarpy County] on 9/16/16."

Sysel appeared with his attorney for a pretrial hearing on September 19, 2016. The district court asked for clarification with respect to speedy trial issues, stating:

> [L]ooking at the file, I just want to make sure I'm clear on where we stand on speedy trial. There is a handwritten request from [Sysel] that was filed back on April 22nd.

However, it does not appear that he went through the actual channels that the Detainers Act requires until later when we got the official request through Iowa.

. . . .

And the form that was filed indicates that the formal request was July 1, 2016.

The court did not have a copy of the formal "request from Iowa" in its file, but it received a copy of the request, which included the requisite certificate of offender status, as Exhibit 2. Exhibit 2 consists of 3 pages. The first page, a form containing the "OFFENDER'S NOTICE OF PLACE OF IMPRISONMENT AND REQUEST FOR DISPOSITION OF INDICTMENTS, INFORMATIONS OR COMPLAINTS," was signed by Sysel on June 30, 2016. The remaining pages contain the "CERTIFICATE OF OFFENDER STATUS" and "OFFER TO DELIVER TEMPORARY CUSTODY" forms, which were signed by the warden of the Iowa facility on July 1. The court stated that either June 30 or July 1 would be the operative date for the start of the 180 day speedy trial period under the detainers act. The court scheduled trial for November 9, 2016.

On November 8, 2016, Sysel filed a motion for discharge in the district court, alleging that his right to a speedy trial under the detainers act had been violated. He also alleged that his constitutional right to speedy trial and his right to a speedy trial under Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016) had been violated.

On November 9, 2016, the date the case had been scheduled for a jury trial, the district court granted the State's request for a continuance and scheduled the hearing on Sysel's motion for discharge for November 14.

At the hearing on November 14, 2016, Sysel informed the district court that he intended to reject a plea offer and proceed with his motion to discharge. The court then received various exhibits, including a copy of the Iowa statutes on detainers; an affidavit of the prosecutor stating that the official detainer forms dated July 1, 2016, were the "first documentation [her] office received regarding [Sysel's] request for final disposition," which were received by the court and forwarded to the prosecutor's office "after that date;" a copy of Sysel's April 2016 pro se motion for disposition; and copies of the 3 detainer forms previously received. Sysel's attorney argued that either Sysel's April 22 pro se motion or the court's May 2 docket entry started the 180 day clock and that at least 191 days had passed as of November 8, when Sysel filed his motion for discharge. In response, the prosecutor argued that the clock began running when the formal detainers act request was received, which was after July 1.

On January 6, 2017, the district court entered an order, denying Sysel's motion for discharge. In addressing Sysel's claim under the detainers act, the court first acknowledged the error it made in the docket entry following the May 2016 hearing, when it stated that Sysel's April 2016 motion for speedy trial would be considered as a request for speedy disposition under the detainers act. The court determined that this previous statement was in error because Sysel's April 2016 motion did not comply with the statutory requirements of article III of the detainers act since it did not contain the required certificate from the officials of the state where Sysel was incarcerated. The court found that Sysel's April 2016 motion complied with the first requirement under article III to submit a written notice of the requested disposition, but that the 180 day speedy trial period was not triggered until the certificate was received on July 1.

The district court stated that because Sysel's "proper request for disposition" under the detainers act was received on July 1, 2016, the speedy trial clock began to run on July 2. The court found that by "counting forward six months and backing up one day, the last day to bring [Sysel] to trial without any excludable days, would have been be January 1, 2017." The court found 130 days had run on the speedy trial clock when Sysel's motion for discharge was filed on November 8, 2016, which tolled the clock, leaving 50 remaining days within which to bring him to trial under the detainers act. Because Sysel's right to speedy trial had not been violated under the detainers act, the court denied his motion in that regard. The court also analyzed Sysel's right to a speedy trial under § 29-1207 and his constitutional right to a speedy trial, denying Sysel's motion for discharge on those grounds as well.

## ASSIGNMENTS OF ERROR

Sysel asserts, restated and reordered, that the district court erred in failing to find that his right to a speedy trial was violated under (1) the detainers act, (2) the Nebraska speedy trial statutes, and (3) the state and federal constitutions.

## STANDARD OF REVIEW

In a ruling on a motion to dismiss with prejudice based on alleged violations of the interstate Agreement on Detainers, a trial court's pretrial factual findings regarding the application of provisions of the agreement will not be disturbed on appeal unless clearly wrong. *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006).

As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Lintz*, 298 Neb. 103, 902 N.W.2d 683 (2017).

Statutory interpretation presents a question of law, which an appellate court resolves independently of the conclusion reached by the trial court. *State v. Bridgeford*, 298 Neb. 156, 903 N.W.2d 22 (2017).

## ANALYSIS

*Speedy Trial Under Detainers Act.*

Sysel asserts that the district court erred when it "reversed" its prior order and subsequently found that Sysel's initial demand for disposition did not comply with the requirements of article III of the detainers act. Brief for appellant at 9.

Nebraska is a contracting party to the interstate Agreement on Detainers Act, a congressionally sanctioned interstate compact, codified in Nebraska as the Agreement on Detainers at Neb. Rev. Stat. § 29-759 (Reissue 2016). *State v. Rieger, supra*. A detainer is a notification filed with the institution in which an individual is serving a sentence, advising the prisoner that he or she is wanted to face criminal charges pending in another jurisdiction. *Id.* In order to avoid prolonged interference with rehabilitation programs, the interstate Agreement on Detainers provides the procedure whereby persons who are imprisoned in one state or by the United States, and who are also charged with crimes in another state or by the United States, can be tried expeditiously for the pending charges while they are serving their current sentences. *Id.*

Article III of the Agreement on Detainers, § 29-759, prescribes the procedure by which a prisoner against whom a detainer has been lodged may demand a speedy disposition of outstanding charges. *State v. Rieger, supra.* Upon receipt of a prisoner's proper request for disposition of untried charges under article III of the Agreement on Detainers, authorities in the state where a charge is pending must bring the prisoner to trial within 180 days. *State v. Rieger, supra.* The 180-day trial limitation under article III(a) of the Agreement on Detainers begins to run on the day a prisoner's request for disposition of untried charges is received by the prosecutor and court of jurisdiction. *State v. Rieger, supra.* If an action is not brought to trial within the time periods authorized by articles III and IV of the Agreement on Detainers, the action shall be dismissed with prejudice under article V(c) of the agreement. *State v. Rieger, supra.*

Under article III of the Agreement on Detainers, for a prisoner's demand for disposition of the charges to trigger the 180-day period, it must be made in the manner required by article III. *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984). Article III(a) establishes the two requirements which must be met before the 180-day limit can be invoked: (1) written notice of the requested disposition and (2) the requisite certificate of the officials of the incarcerating state. *State v. Reynolds, supra.* See, also, *State v. Nearhood*, 2 Neb. App. 915, 518 N.W.2d 165 (1994) (prisoner's failure to include inmate status certificate with request for disposition rendered request ineffective to trigger 180-day period).

Sysel admits that his demand for disposition of charges was not made in compliance with article III of the Agreement on Detainers until July 1, 2016. He argues, however, that the district court's ruling on May 2, finding "his demand for disposition of charges complied with the [detainers act,] was irreversible error." Brief for appellant at 9. Sysel further argues that the court's subsequent January 6, 2017, order, entered 6 months after the original ruling, caused him "irreparable damage" because his "entire defense revolved around timing." Brief for appellant at 12. He asserts that he would have sought compliance with the detainers act sooner had he known that his April 2016 motion was insufficient.

Sysel acknowledges the Nebraska Supreme Court's findings in *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). In that case, the court upheld a district court's order modifying an enhancement order in a DUI case entered 4 days after the original order (modified order found 3 prior convictions, as opposed to 2). The court determined that the district court's initial finding that there were 2 prior convictions was "simply a finding of fact which, like other facts in the case, would subsequently be considered by the court in imposing a sentence." *Id.* at 160, 846 N.W.2d at 255. The Supreme Court went on to state, "Nothing prevents a court from changing a factual finding while it still has jurisdiction over the case." *Id.* The Supreme Court concluded that the district court did not err in modifying its prior finding because the court realized its own error prior to entry of final judgment while it still had jurisdiction and acted appropriately to correct that error. In so holding, the court observed that "'[j]udicial efficiency is served when any court . . . is given the opportunity to reconsider its own rulings, either to supplement its reasoning or correct its own mistakes.'" *Id.*, citing *State v. Hausmann*, 277 Neb. 819, 765 N.W.2d 219 (2009).

Sysel "challenges the blanket rule that 'nothing' prevents a court from changing a factual finding while it has jurisdiction and urges this [c]ourt to find the protection of an accused's rights outweighs judicial efficiency." Brief for appellant at 9-10. Sysel relies primarily on cases dealing

with amendments to sentences after they have been pronounced. See *State v. Cousins*, 208 Neb. 245, 302 N.W.2d 731 (1981) (court's attempt to correct inadvertent use of word "concurrent" when it meant "consecutive" was ineffective). He also relies *State v. Wacker*, 268 Neb. 787, 688 N.W.2d 357 (2004), concerning the enforcement of a cooperation agreement. In that case, the defendant relied on the agreement to his detriment and prejudice and was entitled to its enforcement.

The cases relied upon by Sysel are distinguishable because we are not dealing with a modification of a final order of sentence or the failure to abide by a cooperation agreement. Here, the district court made an incorrect finding with respect to the commencement of the speedy trial clock under the detainers act, and it later acted appropriately to correct that finding while it still had jurisdiction over the case. The court did not err in doing so. See *State v. Bol, supra*. Further, we reject Sysel's argument that he was prejudiced by the court's correction to its finding of the date the request for disposition was made. As we understand the argument, the prejudice claimed by Sysel is that he relied upon the May 2, 2016, journal entry to time the filing of his motion for discharge. However, it was Sysel's failure to properly invoke the detainers act prior to July 1, 2016, that rendered his motion under the detainers act unsuccessful.

Neither party challenges the district court's determination that the formal request for disposition with the requisite certificate was received on July 1, 2016. Counting forward from July 1, only 130 days had passed when Sysel filed his motion for discharge on November 8. As we discuss further below, unlike the 6 month calculation under the Nebraska speedy trial statutes, the detainers act gives 180 days, making the actual last day for trial December 28, 2016, absent excludable periods.

The district court did not err in denying Sysel's motion with respect to speedy trial under the detainers act.

*Statutory Right to Speedy Trial.*

Sysel asserts that the district court erred in finding Sysel's statutory right to a speedy trial was not violated. The State argues that once Sysel invoked the provisions of the detainers act, it is those provisions rather than the provisions of §§ 29-1205 to 29-1209 that govern Sysel's right to a speedy trial. We agree.

A court may not apply Nebraska's 6-month speedy trial rule under § 29-1207 to determine whether a prisoner is timely brought to trial under article III(a) of the Agreement on Detainers. *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006) (applying provisions of detainers act rather than Nebraska's speedy trial statutes to calculate speedy trial time once provisions of detainers act were triggered). Cf. *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000) (statutory right of in-state inmates to speedy trial on pending criminal charges in Nebraska is governed by Nebraska's disposition of untried charges statutes rather than §§ 29-1205 to 29-1209); *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986) (applying Nebraska's disposition of untried charges statutes to speedy trial rights of in-state inmate rather than §§ 29-1205 to 29-1209; finding Nebraska's disposition of untried charges statutes more akin to provisions of detainers act). But see *State v. Steele*, 261 Neb. 541, 624 N.W.2d 1 (2001) (once Nebraska's speedy trial statutes have been triggered by filing of indictment or information, statutory right to speedy trial of defendant under

control of prosecuting authorities who knowingly extradite him or her to another state or to federal authorities is governed by § 29-1207, not detainers act).

The Nebraska prosecuting authorities in this case did not extradite Sysel to Iowa. Once he invoked the provisions of the detainers act, those provisions were what controlled his statutory speedy trial rights. Thus, it is unnecessary for us to address Sysel's arguments with respect to § 29-1207. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

*Constitutional Right to Speedy Trial.*

Sysel asserts that the district court erred in finding Sysel's constitutional right to a speedy trial was not violated.

The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11; the constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *State v. Brooks*, 285 Neb. 640, 828 N.W.2d 496 (2013). Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Id.* None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. *Id.* Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id.*

The first factor, which serves as a triggering mechanism, is the length of delay. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance when determining whether constitutional speedy trial rights have been violated. *State v. Betancourt-Garcia, supra*. Although the constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other, § 29-1207 provides a useful standard for assessing whether the length of the delay is unreasonable under the U.S. and Nebraska Constitutions. See *State v. Schmader*, 13 Neb. App. 321, 691 N.W.2d 559 (2005).

The district court did not discuss whether there was a presumptively prejudicial delay. Rather, the court analyzed all four factors in reaching its decision that Sysel's constitutional rights were not violated. With regard to the length of delay, the court determined that the time between the filing of the original information and Sysel's motion for discharge was 369 days. The court found that 255 of those days were attributable to the various pretrial continuances filed by Sysel and his subsequent unavailability due to his incarceration in Iowa (period from January 8, 2016, continuance of pretrial hearing until September 19 pretrial conference) and determined that this factor did not weigh in Sysel's favor.

Sysel argues that "at most, 115 [days] were attributable to [his] pretrial continuances" (period from January 8 to May 2, 2016--the date of the court's initial journal entry regarding the detainers act) and that the State had the remaining 254 days to bring Sysel "who was readily available in an Iowa prison," to trial. Brief for appellant at 14. As we determined above, however,

the 180-day period under the detainers act did not begin to run until July 1, and only 130 of those days had elapsed when Sysel filed his motion for discharge. This factor does not favor Sysel.

The second factor, the reason for delay, also requires us to evaluate "whether the government or the criminal defendant is more to blame." *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The primary burden to ensure that cases are brought to trial lies with the courts and the prosecutors. *State v. Schmader, supra*. The district court found that this factor weighs in favor of the State. We agree. Despite Sysel's assertions to the contrary, the record does not reflect any deliberate attempt by the State to delay the trial or hamper the defense. As noted above, there were various delays attributable to motions for continuance filed by Sysel, and his April 22, 2016, pro se motion was not an effective request for disposition under the detainers act. Once the formal request for disposition under the detainers act was received, the case proceeded. A pretrial hearing was held on September 19, and trial was scheduled for November 9. This factor weighs in favor of the State.

Under the third factor, we consider "whether in due course the defendant asserted his right to a speedy trial." *State v. Betancourt-Garcia*, 295 Neb. 170, 188, 887 N.W.2d 296, 311 (2016). There is some responsibility upon a defendant to assert his right to a speedy trial, but this is not to say that a defendant has a duty to bring himself to trial or to demand a trial. *State v. Wilson*, 16 Neb. App. 878, 754 N.W.2d 780 (2008). Sysel's pro se motion in April 2016 did not contain the requisite certificate required to implicate the detainers act. The formal request with certificate was not received until July 1. Sysel then filed his motion for discharge on November 8. The district court found that this factor weighed in favor of the State. Sysel argues that he "vigorously" asserted his right to a speedy trial. Brief for appellant at 16. While not a vigorous assertion of his rights, Sysel did assert his right to a speedy trial in due course. This factor weighs slightly in Sysel's favor.

The final factor considers whether the defendant suffered any prejudice from the delay. See *State v. Betancourt-Garcia, supra*. A showing of actual prejudice to a defendant alleging violation of constitutional speedy trial rights is required if the government exercised reasonable diligence in pursuing the defendant. *Id.* In analyzing the prejudice factor of the four-factor test to determine whether constitutional speedy trial rights have been violated, the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), enumerated three aspects: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the defendant, and (3) limiting the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. The third is most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*, 407 U.S. at 532.

Sysel argues that after being incarcerated in Iowa, where he is serving a 5 year sentence, he "desperately begged for a speedy trial" in his April 2016 pro se motion filed in this case. Sysel argues that this was his attempt to prevent the Nebraska case from lingering. He also states that he "knew if he was brought to trial and found guilty that he could be sentenced concurrently to his prison sentence." Brief for appellant at 17. Sysel's arguments do not demonstrate oppressive pretrial incarceration stemming from the Nebraska charge.

Next, Sysel argues that the delay weighed heavily on him and that while incarcerated (in Iowa), he was "left to ponder this case and its effect on his current status and future," which

prompted him to be diligent in requesting a speedy disposition. Beyond Sysel's assertion that the delay weighed heavily on him, his arguments do not demonstrate anxiety and concern beyond that inherent in every criminal case. While there may be some degree of anxiety and concern in every criminal case, anxiety or concern by itself does not establish prejudice where the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances. *State v. Wilson, supra*.

Finally, Sysel argues that his defense will be impaired by the delay. He notes that the present appeal is interlocutory, and he argues that if there are suppression issues, those will have been dealt with prior to trial, causing more delay. He also argues that witnesses may not be available or able to recall certain details. The State argues that delay due to any potential suppression issues should not be attributable to the State. The State also argues that issues of witness unavailability or inability to recall detail is as likely to work against the State as against Sysel. The State also observes that due to the nature of the charges against Sysel, most of the witnesses will be police officers or county employees and that any police officer witnesses may be able to refresh their memories with police reports.

The record fails to support any prejudice to Sysel from the delay. This factor favors the State.

Upon weighing the totality of the circumstances and the four factors of the balancing test, we conclude that Sysel's right to a speedy trial under U.S. Const. amend. VI and Neb. Const. art. I, § 11, was not violated. The district court did not err in denying his motion for discharge in this regard.

## CONCLUSION

The district court did not err in denying Sysel's motion for discharge.

AFFIRMED.